NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC, | |
| Plaintiff, | Civil Action No. 12-3899 (MAS)(LHG) |
| v. | |
| MAKSYM TSANKO and JOHN DOES 1-5, 7-12, 14-35, 37, 38 and 40, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant John Doe #1's ("Defendant") Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), (b)(6), and (b)(7). (Def.'s Br., ECF No. 65.) Plaintiff Malibu Media, LLC ("Plaintiff" or "Malibu Media") filed Opposition. (Pl.'s Opp'n, ECF No. 66.) Defendant filed a Reply. (Def.'s Reply, ECF No. 67.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendant's Motion to Dismiss is DENIED in part.

**I.     Introduction**

This litigation stems from Malibu Media's recent crackdown on the alleged infringement of its pornographic films. Since 2012, Malibu Media has filed hundreds of lawsuits nationwide, including at least ten cases currently pending in this District, against "John Doe" defendants alleging copyright infringement of its movies.

Because of the series of lawsuits brought by Plaintiff, its pattern of conduct has been easily recognized by courts and typically includes the following chain of events: Malibu Media files suit

against multiple (usually ranging from ten to fifty) John Doe defendants, known only by their Internet Protocol ("IP") addresses. Simultaneously or shortly thereafter, Plaintiff files a motion for early discovery seeking leave to serve subpoenas on Internet Service Providers ("ISPs") to obtain the identity of each defendant using their respective IP addresses. After obtaining the defendants' identities, Plaintiff contacts them seeking settlement. Under the threat of being exposed as alleged infringers of pornography coupled with the high costs of litigation and potential statutory damages, Malibu Media is able to extract settlements from most, if not all, of the defendants. The remaining defendants, if any, are usually voluntarily dismissed or severed, usually leaving one (or very few) named defendants in the litigation.

Malibu Media's legal tactics have been frowned upon by some courts and commentators alike resulting in Plaintiff being stigmatized as a "copyright troll."[1] At least one district has placed restrictions on Plaintiff's settlement tactics. *See Malibu Media, LLC v. Doe 1*, No. PJM 12-1195, 2013 WL 5603275, at *4 (D. Md. Oct. 10, 2013) (concerned by reports of "abusive settlement negotiations with Doe Defendants . . . . Judges of this District have determined to impose certain restrictions with respect to settlement negotiations in these cases"). Plaintiff vehemently denies being a copyright troll and continues to exercise its right to file lawsuits across the nation purportedly in an effort to stop the alleged infringement of its works. This action is the result of Malibu Media's continuing efforts.

## II. <u>Background</u>

From 2009 to 2011, Brigham Field created over eighty erotic movies, sixteen of which are at issue in this litigation (the "Works"). (Am. Compl., ECF No. 37, Ex. B.) On February 8, 2011, Mr. Field and his wife Collette Pelissier Field (collectively, "the Fields") founded Malibu Media, a

---

[1] *See, e.g.*, Luke S. Curran, Comment, *Copyright Trolls, Defining the Line Between Legal Ransom Letters & Defending Digital Rights*, 13 J. Marshall Rev. Intell. Prop. L. 170, 171 (Fall 2013) (including Malibu Media as one of several businesses "publicly branded as 'copyright trolls'").

limited liability company organized and existing under the laws of the State of California. (*Id.* ¶ 1.) Plaintiff owns the copyrights for the Works, "each of which contains an original work of authorship." (*Id.* ¶¶ 48, 55, Ex. B.)

According to Plaintiff, Defendant used a BitTorrent peer-to-peer file sharing protocol to infringe on Plaintiff's copyrights. (*Id.* ¶¶ 5-6, 14, 30, 41, 49, 57.)

> "BitTorrent" is a common peer-to-peer file sharing protocol used for distributing large amounts of data. "Torrent sites" are websites that index torrent files currently available for copying and distribution via the BitTorrent protocol. A torrent file contains a file that has been broken into hundreds or thousands of pieces. With BitTorrent "Client" software, a user can upload and download data using the BitTorrent protocol.
>
> As a demonstration of how this process works, someone (an "initial seeder") can upload a copyrighted movie that has been broken down into a torrent to a torrent site. When another person (a "peer") seeks to download that movie, the BitTorrent protocol causes the initial seeder's computer to send certain pieces of the movie to the peer's computer. Once the peer receives a piece of the movie, her computer starts transmitting that piece to others. The recipient peers then automatically begin delivering the piece they just received to other peers in what is called a "swarm." The BitTorrent Client then reassembles the pieces on each peer's computer until the movie may be viewed in its entirety.

*Malibu Media, LLC v. Lee*, No. 12-03900, 2013 WL 2252650, at *1 (D.N.J. May 22, 2013) (internal citations omitted).

After realizing that its movies were being uploaded and downloaded on torrent sites, Plaintiff hired IPP, Limited ("IPP") to investigate the alleged infringement of its Works. (Am. Compl. ¶ 38.) Specifically, IPP was retained to identify the IP addresses of the alleged infringers using the "BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' [sic] copyrighted works." (*Id.*) To investigate the alleged infringers, IPP used INTERNATIONAL IPTRACKER v1.2.1 forensic software and related technology to scan peer-to-peer networks "for the presence of infringing transactions." (*Id.* ¶ 39.) The file for Plaintiff's Works was assigned a SHA-1

hash value, referred to as a Unique Hash Number, and IPP used this Unique Hash Number to isolate the transactions and the IP addresses allegedly infringing Plaintiff's Works. (*Id.* ¶ 40.)[2]

The fruits of Plaintiff's investigation resulted in this lawsuit against Defendant, a corporation that, for obvious reasons, wishes to remain anonymous throughout this litigation. (Op. & Order Denying Mot. to Quash, ECF. No. 64, at 2.) Plaintiff alleges that Defendant is liable for direct and contributory copyright infringement for illegally copying and distributing a website containing Plaintiff's copyrighted movies. (Am. Compl. ¶¶ 3, 5-6, 50.)

Plaintiff particularly alleges that: (1) Plaintiff's Works, identified by a Unique Hash Number, were on a website in the form of "a single torrent file" (the "Torrent File") (*id.* ¶ 13); (2) Defendant installed a BitTorrent Client on its computer and went to the torrent site to upload and download Plaintiff's copyrighted Works (*id.* ¶¶ 18, 30); (3) using the BitTorrent protocol, Defendant copied and distributed the Torrent File without Plaintiff's consent (*id.* ¶¶ 10, 14, 41, 50, 58); (4) Defendant's computer connected to IPP's investigative server and transmitted a full copy, or a portion thereof, of the Torrent File (*id.* ¶¶ 42, 49, 56); and (5) these transmissions occurred on May 10, 2012 at 6:18 p.m. from Defendant's IP address (24.0.139.41) located in Trenton, New Jersey (*id.*, Exs. A, C). During its investigation, IPP compared the Works with the Torrent File and determined that "they were identical, strikingly similar or substantially similar." (*Id*. ¶ 44.)

Plaintiff further alleges that Defendant was a "peer member" that participated in a swarm and thus, "induced, caused or materially contributed to the infringing conduct of [other swarm members]." (*Id.* ¶¶ 35, 57, 61.) In addition, Defendant "knew or should have known that other BitTorrent users . . . would become members of the swarm with Defendant" and that they "were

---

[2] The Unique Hash Number is "a string of alphanumeric characters in the torrent file that the [BitTorrent Client software] uses to verify the data that is being transferred." (Am. Compl., Ex. D.) The Unique Hash Number associated with Plaintiff's Works was 121AC0B46088E7C235A23D4379BE65A1840E9B77. (*Id.* ¶ 40.)

4

directly infringing Plaintiff's original copyrighted Works by copying constituent elements of [them]." (*Id.* ¶¶ 59-60; *see also id.* ¶¶ 49, 56.)

According to Plaintiff, Defendant's willful infringement of the Works (*id.* ¶ 52) violated Plaintiff's exclusive right to reproduce, redistribute, perform, and display the Works in accordance with 17 U.S.C. §§ 106 and 501 (*id.* ¶ 51). As a result, Plaintiff has suffered actual damages including lost sales, price erosion and a diminution of the value of its copyrights. (*Id.* ¶ 53, 63.)

## III. Procedural History

In light of the foregoing alleged conduct, on June 26, 2012, Plaintiff filed its initial complaint against forty unnamed individuals and/or entities alleging direct copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C §§ 106 and 501, and contributory copyright infringement, seeking both monetary and injunctive relief. (Compl., ECF No. 1.)[3] Seven days later, Plaintiff filed an unopposed motion to serve third-party subpoenas on defendants' ISPs seeking personal identifying information for the unnamed defendants. (ECF No. 4.) This motion was granted on August 8, 2012. (ECF No. 7.) In September and October 2012, several individual defendants, including Defendant John Doe #1, filed motions to quash and to sever. (ECF Nos. 8-12, 17, 18, 27.)

Shortly thereafter, Plaintiff began voluntarily dismissing various defendants. On December 5, 2012, Plaintiff filed its Amended Complaint against the remaining defendants at that time – Maksym Tsanko, John Does 1-5, 7-12, 14-35, 38 and 40. (Am. Compl.) Several months later, this Court issued an Order to Show Cause as to why the Court should not dismiss without prejudice all claims against all John Does, except John Doe #1. (ECF No. 59.) Four days later, Plaintiff voluntarily dismissed all

---

[3] In particular, Plaintiff asks the Court to permanently enjoin Defendant from continuing to infringe Plaintiff's Works and order Defendant to permanently remove the Torrent File and copies of Plaintiff's Works from its computer. In addition, Plaintiff seeks the greater of $150,000 in statutory damages, per infringed Work, and its actual damages. (Am. Compl.)

5

remaining defendants except John Doe #1. (ECF No. 60.)[4] Accordingly, John Doe #1 is the only remaining defendant.

On April 18, 2013, Defendant's Motion to Quash was denied by the Honorable Lois H. Goodman, U.S.M.J. (ECF No. 64.)[5] And now, for the following reasons, Defendant's Motion to Dismiss is DENIED in part.

**IV.      Analysis**

Defendant moves to dismiss Plaintiff's claims on several grounds: (1) lack of standing pursuant to Rule 12(b)(1); (2) failure to join indispensible parties pursuant to Rules 12(b)(7) and 19(a) and (b); and (3) failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). Each of these grounds requires a different standard of review. The Court will address each of them, in turn.

   **A.      Plaintiff Has Standing to Bring Claims for Copyright Infringement**

   **1) Legal Standard**

Before proceeding to review the merits of a case, the Court has a duty to assure itself that Plaintiff has Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (alteration in original).

A defendant may challenge the court's subject-matter jurisdiction with either a facial or factual attack. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). In a facial attack, the defendant contests the

---

[4] Due to Plaintiff's subsequent dismissal of all defendants, except John Doe #1, the Order to Show Cause hearing was dismissed as moot. (ECF No. 62.) In total, Plaintiff settled with nine defendants and dismissed seven defendants because it was unable to serve them after receiving identifying information from the ISPs. (ECF No. 43.).

[5] The issue of severance was deemed moot because all other defendants had been dismissed.

sufficiency of the well-pleaded allegations insofar as they provide a basis for the court's exercise of subject-matter jurisdiction. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). A facial attack takes the facts in the pleadings as true, construed in the light most favorable to the plaintiff, and determines therefrom whether jurisdiction exists. *Gould Elecs.*, 220 F.3d at 176; *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see Lujan*, 504 U.S. at 561.

In a factual attack, on the other hand, the defendant challenges the factual basis underlying the court's subject-matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true. *Cunningham v. Lenape Reg'l High Dist. Bd. of Educ.*, 492 F. Supp. 2d 439, 447 (D.N.J. 2007). A factual attack allows the district court to consider evidence outside the pleadings, to which "no presumptive truthfulness attaches," weigh evidence, and shift the burden of proving jurisdiction onto the plaintiff. *Mortensen*, 549 F.2d at 891.

Here, the Defendant's Rule 12(b)(1) motion is a factual attack because Defendant relies on documents extrinsic to the Amended Complaint to challenge subject-matter jurisdiction. (*See* Def.'s Br., Exs. A-D.) As such, the Court will consider additional extrinsic facts specific to this motion.

### 2) Additional Relevant Facts

The Fields founded Malibu Media on February 8, 2011 and are the sole owners. (*Id.*, Ex. B.) Upon founding Malibu Media, Mr. Field orally agreed to transfer all the copyrighted Works to his company. (*Id.*, Exs. B, D.) In an affidavit, Mrs. Field attests that "[the Fields] intended for the transfer of rights to cover every single right associated with a copyright; including the exclusive right to sue for past, present, and future infringement." (*Id.*, Ex. B.) Between November 2011 and March 2012, Plaintiff registered the Works for copyright protection. (Am. Compl., Ex. B.) However, on the registration applications, Plaintiff did not state that the Works were authored by Mr. Field and then

transferred to Malibu Media. Rather, Plaintiff mistakenly told its attorney to list the author as "Malibu Media, employer for hire." (Am. Compl., Ex. B; Def.'s Br., Ex. B.)

This mistake caused a district court in the Eastern District of Michigan to question the validity of its copyrights, prompting Plaintiff to file a Form CA with the U.S. Copyright Office on September 13, 2012, to "correct and amplify" its copyright registrations. (Def.'s Br., Exs. A-B.) Attached to its Form CA, Plaintiff also filed a "Copyright Assignment Agreement" memorializing the prior oral agreement; the agreement assigns Plaintiff "all . . . title, right, and interest in and to the copyrights for the [Works] . . . including all registrations and applications covering the Works." (*Id.*, Exs. B, D.) Then, on December 5, 2012, Plaintiff and Mr. Field executed a "Clarification of Assignment Agreement" affirming that Mr. Field is the sole author of the Works and that he intended to transfer "all of [his] right, title and interest in and to the copyright[ed] [Works] exclusively to [Plaintiff]" including the "exclusive rights set forth in 17 U.S.C. § 106." (*Id.*, Ex. C.) After filing the Form CA, the Copyright Office issued corrected copyright registrations reflecting that Mr. Field authored each Work and then transferred them to Plaintiff after the company was formed. (ECF No. 68.)

### 3) Parties' Positions

Defendant mainly contends that Plaintiff was not the legal or beneficial owner of fifteen of the Works at the time this lawsuit was filed and, therefore, lacks standing to bring this lawsuit.[6] (Def.'s Br. 1, 9-10, 16; Def.'s Reply 4.) To support its argument, Defendant asserts that Mr. Field's alleged February 8 oral assignment to Plaintiff lacked consideration and neither assigned Plaintiff exclusive rights to the Works nor the right to sue for past infringement. (*Id.*) Moreover, the subsequent written agreements and supplemental forms do not cure these defects because: (1) Plaintiff's Form CA attempts to correct false representations of material fact in violation of 17

---

[6] Defendant does not dispute that Plaintiff owned "Just the Two of Us" at the time it filed this lawsuit. (Def.'s Br. 2.)

U.S.C. 409(5);[7] (2) the September 13 Copyright Assignment Agreement did not explicitly assign Plaintiff any exclusive rights under 17 U.S.C. § 106 or the right to sue for past infringement; and (3) even if the December 5 Clarification of Assignment is valid, any exclusive rights stemming from the oral assignment cannot be retroactively conferred on Plaintiff to give it standing. (Def.'s Br. 3-5, 11-13; Def.'s Reply 3.)

In response, Plaintiff makes two main assertions: (1) its inadvertent error on its copyright registration forms does not invalidate its copyrights or standing to sue (Pl.'s Opp'n 11-12, 18-19); and (2) that Plaintiff became owner of—and in possession of any and all exclusive rights to—the Works on February 8, 2011 as subsequently memorialized in the written agreements (*id.* at 15). As a counterattack, Plaintiff also challenges Defendant's own standing, as an alleged third-party infringer, to challenge Plaintiff's assignment. (*Id.* at 16.)

### 4) Discussion

Plaintiff has met its burden to show that it has standing—and that this Court has subject-matter jurisdiction—to bring this copyright infringement lawsuit against Defendant.

As an initial matter, the Court finds that Plaintiff has shown that it has valid copyright registrations for the Works and that Plaintiff is the owner of those works. Namely,

> the background context of Malibu's formation, the Affidavit of Collette Field, the text of the Written Assignment of September 13, 2012, and the text of the Clarification Agreement from December 5, 2012, all demonstrate that [Mr.] Field intended to transfer and did transfer complete and exclusive rights in his copyrighted works to Malibu when the company was formed on February 8, 2011. Malibu was the 'exclusive' owner of the Brigham Field copyrights as of that time, and it has standing to sue for infringement of those works presently.

*Malibu Media, LLC v. John Does 1, 6, 13, 14, and 16*, No. 12-2078, 2013 WL 30648, at *6 (E.D. Pa. Jan. 3, 2013); *see also Malibu Media v. John Does 1–13*, No. 12–12586 (E.D. Mich. Feb. 22, 2013) (concluding that Malibu Media had standing because the registration was corrected through the Form

---

[7] Section 409 lists the information required on a copyright application, including how a copyright claimant obtained ownership of the work, if it is not the author.

CA filed with the Copyright Office on September 13, 2012); *Malibu Media, LLC v. John Does 7, 9-11, 15-31, 33-36, and 39*, No. 12-01953, 2013 WL 3753435, at *4-6 (D. Colo. July 15, 2013) (finding that Malibu Media owned copyrights for the works, was properly assigned exclusive rights to the works, and had the right to sue for past infringement); *Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at *4 (N.D. Ill. Mar. 7, 2013) ("The error in Malibu Media's registration with the United States Copyright Office does not deprive it of standing to enforce its copyrights").

Even more compelling, Plaintiff submitted its corrected copyright registrations for the Works reflecting that Mr. Field created the Works but transferred his rights to Malibu Media after the company was formed, but before the original registration certificates were issued (ECF No. 68). *See* 17 U.S.C. § 408(d) ("The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration"); *see also Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670 (JBS), 2006 WL 842883, at *8 (D.N.J. Mar. 31, 2006) (Simandle, J.) ("[T]he existence of a copyright registration certificate issued from the United States Copyright Office is prima facie evidence of the validity of the party's copyright and of the facts stated in the certificates, including ownership of the copyright"). As such, the Court concludes that Plaintiff has the requisite standing to bring the claims in this action.

Furthermore, the Court agrees that, as an alleged third-party infringer, Defendant does not have standing to challenge Mr. Field's assignment to Plaintiff. Section 204 of Title 17 governs the execution of transfers of copyrights between copyright owners and transferees. The court, in *Billy-Bob Teeth v. Novelty, Inc.*, held that a third-party infringer does not have standing to challenge a transfer of copyright ownership "where there is no dispute between the copyright owner and the transferee about the status of the copyright." 329 F.3d 586, 592-93 (7th Cir. 2003) (citing *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982)). Under those circumstances, a third-party infringer cannot use § 204 to dodge a copyright infringement lawsuit. *Id.* Here, Defendant was not a party to the transfer and it is clear that there is no dispute between Mr. Field and Plaintiff

regarding the copyright status of the Works. Indeed, Plaintiff and Mr. Field have alleged and executed numerous agreements and affidavits to prove that Mr. Field created the Works and subsequently transferred all rights to Plaintiff. Therefore, Defendant does not have standing to challenge the validity of the transfer to try to avoid suit for copyright infringement. *See Malibu Media*, 2013 WL 30648, at *9.

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied.

**B.     Plaintiff Has Not Failed to Join Indispensible Parties**

    **1) Legal Standard**

Rule 12(b)(7) provides that a party may move to dismiss for failure to join a party under Rule 19. The moving party must demonstrate that a non-moving party is both necessary and indispensable under Rule 19 and, as such, must be joined in the action. *Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. 07-1257 (JLL), 2007 WL 3349320, at *3 (D.N.J. Nov. 9, 2007). If the party is necessary and indispensible to the action and joinder would deprive the court of subject matter jurisdiction, the court must dismiss the complaint. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003).

In its analysis, the court must initially determine whether the non-joined party should be joined according to the Rule 19(a) standard. *Gen. Refractories Co. v. First Sale Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). Rule 19(a)(1) provides the following factors to determine whether a person is a required party:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> 
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b), which addresses when an action should be dismissed because joinder of the necessary party would destroy subject-matter jurisdiction or otherwise be infeasible. *Janney*, 11 F.3d at 402.

### 2) Parties' Positions

Defendant asserts that this action should be dismissed because Plaintiff failed to join the BitTorrent Operators, who have been found to induce "this type of infringement," and initial seeders, who offer the entire movie for upload by others. (Def.'s Br. 14-15; Def.'s Reply 5-6.) Essentially, Defendant doubts that Plaintiff can prove its "swarm" theory of liability with only one defendant. (Def.'s Br. 14-15.) Plaintiff disagrees and asserts that it has not failed to join indispensible parties because all joint tortfeasors do not have to be joined for the Court to accord complete relief to Plaintiff and no other party can claim an interest in this lawsuit.[8] (*Id.* at 20-23.)

### 3) Discussion

Defendant's argument is untenable. The Court sees no reason why it could not accord complete relief among the existing parties. Copyright infringement is a tort and it is well-settled that joint tortfeasors—even under a theory of joint and several liability—"are neither necessary parties under Rule 19(a) nor indispensable parties under Rule 19(b)."[9] *Malibu Media*, 2013 WL 30648, at

---

[8] Defendant also asserts that Mr. Field is an indispensable party. Because the Court has already concluded that Plaintiff is the owner of the copyrighted Works and has standing to sue, the Court will not address Defendant's argument that Mr. Field must be joined to prevent dismissal of the lawsuit. The Fields are the sole owners of Malibu Media, so no one else can claim an interest relating to the Works at issue in this action.

[9] The Court must note that Plaintiff has made a *de facto* change in its position regarding joinder. In its Amended Complaint, Plaintiff alleges that joinder of defendants was proper pursuant to Rule 20(a)(2) because, *inter alia*, defendants were a part of the same series of infringing transactions,

*10 (citing *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 6 (1990)). To prevail on its claims of direct and contributory copyright infringement, Plaintiff must ultimately prove that Defendant downloaded Plaintiff's copyrighted Works without its consent and that Defendant induced, caused or materially contributed to the infringing activity of another. The fact that the initial seeder, BitTorrent Operator, or other swarm members might also be liable for the same causes of action from the same underlying facts does not affect the relief that Plaintiff can obtain from Defendant. In other words, the relief that Defendant would owe Plaintiff if it did infringe upon Plaintiff's copyrighted Works should not be affected by the inclusion or exclusion of the initial seeder, BitTorrent Operator, or other swarm members in this action. Moreover, any "questions surrounding the initial seeders [, BitTorrent Operators, or swarm members] can be explored during discovery and at trial—there is no necessity to join them as defendants under Rule 19." *Id.*

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(7) is denied.

### C. Claims for Copyright Infringement

#### 1) Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the

---

making them jointly and severally liable for the infringement of the other defendants. (Am. Compl. ¶ 10.) Plaintiff has since dropped all defendants, except John Doe #1, and is proceeding against Defendant for both direct and contributory copyright infringement.

elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### 2) Parties' Positions

Plaintiff asserts that it has alleged a *prima face* case of copyright infringement: "By using the BitTorrent protocol and a BitTorrent Client. . . Defendant copied the constituent elements of the registered work[s] that are original [without Plaintiff's authorization]." (Pl.'s Opp'n 20.) Defendant did not specifically address Plaintiff's allegation of copyright infringement. Instead, Defendant presumed that Plaintiff could not state a claim due to its lack of standing. (Def.'s Br. 10.)

### 3) Discussion

The Court cannot, at this time, conclude that Plaintiff has made a *prima facie* claim for copyright infringement. To establish a claim of copyright infringement, Plaintiff must show: (1) that it owns a valid copyright; and (2) original elements of its work were copied without authorization. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)

(citations omitted). After establishing direct copyright infringement of a third-party, a party is liable for contributory infringement only if, "with knowledge of the infringing activity," it "induces, causes or materially contributes to the infringing activity of another." *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (internal quotation marks omitted)).

Plaintiff has identified the sixteen original Works that are the subject of this action and that Plaintiff owns the copyrights for these Works. (Am. Compl. ¶¶ 48, 55, Ex. B.) To support its allegations, Plaintiff attached to its Amended Complaint a list of the Works that Defendant allegedly infringed and evidence of ownership and registration of the copyrights. (*Id.*, Ex. B.)

The second element, however, is less clear. Some courts have questioned whether a plaintiff can sufficiently allege a claim for copyright infringement where a defendant has only been identified by its IP address. The same question lingers in this case where Defendant's connection to the alleged infringement is based solely on its IP address. The concerns stem from "doubts that the subscribers of IP addresses are actually the individuals who carried out the complained of acts." *Patrick Collins, Inc. v. John Doe 1*, No. 12-1154, 2013 WL 2177787, at *8 (E.D.N.Y. May 18, 2013); *see also Third Degree Films, Inc. v. John Does 1-110*, No. 12-5817 (WJM), 2013 U.S. Dist. LEXIS 27273, at *5 (D.N.J. Jan. 17, 2013) ("Indeed the infringer might be someone other than the subscriber; for instance, someone in the subscriber's household, a visitor to the subscriber's home or even someone in the vicinity that gains access to the network"). These concerns are illuminated, in this case, where Defendant has identified itself as a corporation, rather than an individual living in a household.

Here, Plaintiff's allegations all hinge on Defendant's—a corporation—alleged subscription to the IP address listed in Plaintiff's exhibits. The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the Defendant-corporation is connected to the infringement solely based on its IP address. It may be possible that Defendant is the alleged infringer that subscribed to this IP address,

but plausibility is still the touchstone of *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.

Because of the very concerns this Court has, the Court in *AF Holdings v. Rogers*, deferred its ruling on plaintiff's copyright infringement claims pending receipt of a more definitive statement:

> Due to the risk of "false positives," an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement. In *AF Holdings LLC v. Doe*, 2013 WL 97755, at *8 (N.D. Cal. Jan. 7, 2013), one of the reasons the court denied plaintiff leave to file an amended complaint alleging that a particular individual, Hatfield, infringed plaintiff's copyrighted material, was that the amended complaint alleged "no facts showing that Hatfield infringed AF Holdings' copyrighted material, apart from the facts that were previously alleged and that have been known to AF Holdings for more than a year— in particular, that the IP connection through which the material was downloaded is registered to Hatfield."
>
> As mentioned above, Plaintiff alleges that Defendant, using IP address 68.8.137.53, participated in the swarm that downloaded and distributed the Video on May 7, 2012. Under Rule 11(b)(3), Plaintiff's counsel certified that to the best of his knowledge, this factual contention has evidentiary support. ***However, due to the potential for abuse in these types of cases, the Court wants to make sure that Plaintiff's contention is supported by evidence that goes beyond the identity of the subscriber to the IP address.*** Therefore, the Court orders Plaintiff to provide a more definite statement setting forth the factual basis for its allegation that Defendant used IP address 68.8.137.53 to infringe its copyright.

No. 12-1519, 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) (emphasis added).

Neither party has sufficiently briefed the issue, so the Court will give each party an opportunity to do so. The Court, therefore, defers its ruling on Defendant's motion to dismiss pursuant to Rule 12(b)(6) pending further briefing addressing the following issue: whether Plaintiff can plausibly allege a *prima facie* claim of copyright infringement stemming from the use of peer-to-peer file sharing systems where Defendant-corporation is connected to the alleged infringement solely based on an IP address.

## V. **Conclusion**

For the reasons set forth above, and other good cause shown, it is hereby ordered that Defendant's Motion to Dismiss is DENIED in part. The Court hereby defers its ruling on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) pending further briefing by the parties. An Order will be entered consistent with this Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: November 30, 2013