Jane E. Keene, Esq.
KEENE IP LAW, LLC
100 Overlook Center, 2nd Fl.
Princeton, New Jersey 08540
Telephone: (609) 375-2085
Email: jane@keeneiplaw.com
*Attorneys for JOHN DOE # 1*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>MAKSYM TSANKO and JOHN DOES 1-5, 7-12, 14-35, 37, 38 and 40,<br><br>Defendants. | CIVIL ACTION No.<br>3:12-CV-03899<br><br>*Document filed Electronically* |

**JOHN DOE #1's MEMORANDUM OF LAW
IN RESPONSE TO COURT ORDER OF NOVEMBER 30, 2013**

# **TABLE OF CONTENTS**

I.  BACKGROUND INFORMATION............................1

II. LEGAL STANDARD...................................1

III. LAW AND ARGUMENT... ..............................3

   A. PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE INFERENCE THAT DEFENDANT'S SUBSCRIPTION TO AN INTERNET ACCOUNT LINKS IT TO THE ALLEGED ACTS OF INFRINGEMENT

IV. CONCLUSION......................................11

i

# TABLE OF AUTHORITIES

**Federal Cases**

AF Holdings LLC v. Rogers, No. 12-1519 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . 2, 4

Erickson v. Pardus, 551 U.S. 89, 94 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) . . . . . . . . . . . . . . . . 3

Nucorp v. Bila, 1:12-cv-07029 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Patrick Collins v. John Does, 2:11-cv-15231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rules**
Fed. R. Civ. P. 8................................................................................1, 10
Fed. R. Civ. P. 11..............................................................................10, 11
Fed. R. Civ. P. 12(b)(6).....................................................................1, 3, 10

**Federal Statutes**
18 U.S.C. § 2511 *et seq.* ...............................................................................10

I.  BACKGROUND INFORMATION

Malibu Media, LLC ("Plaintiff") filed a First Amended Complaint (FAC) on December 5, 2012, which fails to meet the requirements of Rule 8 of the Fed. R. Civ. P. Rather than state any plausible claim of direct or contributory copyright infringement, Plaintiff presents only vague and conclusory statements, which are not entitled to a presumption of truth.

The court is already aware of the tactics and potential for abuse in these types of cases. When filing the FAC, Plaintiff had ample time to investigate the allegations made therein, but the FAC is replete with omissions of factual information and details. Indeed, because of this, none of the allegations should be entitled to a presumption of truth. Moreover, based on the facts of the case, no one could make even an inference that John Doe #1 is culpable, since there can be no finding of personal participation of a corporation in the acts alleged by Plaintiff.

The FAC fails to meet the pleading requirements of Rule 8, Fed. R. Civ. P. and should be dismissed in accordance with Rule 12, Fed. R. Civ. P., for reasons which follow.

II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that

"state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. While all factual allegations must be accepted as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, which may be disregarded, *Iqbal*, 556 U.S. at 678.

Under *Bell Atlantic*, however, merely pleading a possibility of recovery is not enough. The duty to furnish factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." 127 S.Ct. at 1966 (internal quotations omitted).

In *Bell Atlantic*, the Supreme Court made it much easier for defendants to succeed on a 12(b)(6) motion. The Court explained that requiring "plausible grounds" for relief was not a "probability requirement at the pleading stage: it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the alleged wrongdoing. *Id.* at 556.

Thus, although the court will assume that the plaintiff's factual allegations are true, it will no longer assume that legal conclusions are true. It may be that

2

the court construes the allegations as legal conclusions, leaving no factual allegations to support the plaintiff's claims.

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Second, it should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

### III. LAW AND ARGUMENT

#### A. PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE INFERENCE THAT DEFENDANT'S SUBSCRIPTION TO AN INTERNET ACCOUNT LINKS IT TO THE ALLEGED ACTS OF INFRINGEMENT

When considering the FAC in its entirety under a Rule 12(b)(6) motion, in determining plausibility, the court is to draw on judicial experience and common sense. *Iqbal* at 1950. The various paragraphs of the FAC that directly, or indirectly, relate to the Defendant will now be addressed.

With respect to ¶¶5, 8, 10, 13 and 30 of the FAC, Plaintiff alleges that Defendant "copied and distributed a website", that "[e]ach of the (copyrighted) Works were on a website" which, "upon information and belief, each defendant went to a torrent site to upload and download Plaintiff's copyrighted works." In

addition, "each of Defendant's acts of copyright infringement occurred using an Internet Protocol address (IP) address", and involved "the exact same piece of Plaintiff's copyrighted Work."

Information and belief pleading is insufficient after *Bell Atlantic*. In addition to the above, although Plaintiff claims to own the Works, this is merely a conclusory claim of ownership. Plaintiff also conveniently fails to identify the website, or the duration that Defendant was purportedly present on the website. Yet, in ¶41(A) of the FAC, Plaintiff alleges "[e]ach Defendant had copied a piece of Plaintiff's copyrighted Works". Later, in ¶37, Plaintiff is able to arrive at the legal conclusion that a full file was downloaded. Plaintiff makes these purely speculative conclusions without any facts to support the conclusions.

In view of the above, the FAC does not explain what link, if any, there is between Defendant and the IP address in uploading and downloading the Works available on a "website", or the purported files (or pieces) from "a website". It is possible that Defendant is the subscriber to the IP address, but that does not mean that he/she is plausibly guilty of infringement based on the IP address alone, particularly in view of the fact that Defendant is a corporation.

With respect to ¶14, "[e]ach of the Defendants copied and distributed…the exact same torrent file" yet Exhibit C of the FAC shows differing numbers of alleged infringements, for example, Does 1-8, 10-17, 21-

4

25, 27-28, 30, 32-36, 38-39, are shown as having 16 alleged infringements, Does 9, 20, 26, 29 each have 14 alleged infringements, and Does No. 18-19, 31, 37 and 40 each have 15 alleged infringements. If the same exact file were copied as alleged, why would different numbers appear for each Defendant? And, if the Defendants were operating in concert in a swarm, why did it take over two months to complete? These are but two missing pieces of the puzzle.

Moving ahead to ¶18, "[e]ach Defendant installed a BitTorrent Client onto his or her computer." This is a legal conclusion, unsupported by fact. John Doe #1, in a sworn declaration, has averred that he owns a business in an urban setting, which has a WiFi (wireless) Internet router that was on at the alleged time of the infringement, i.e., May 10, 2012 at 6:18 p.m., that he scanned his computers and found no portion of the alleged infringing materials at the time and date specified. John Doe #1's Doc. #27-4. Certainly with a WiFi router, it is uncontrovertible that anyone in the area could have used Defendant's IP address, since an IP address identifies only the location at which one of any number of computer devices may be deployed.

With respect to ¶35, Plaintiff makes vague allegations and legal conclusions that "each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions,

uploading and downloading, and by other types of transmissions." Again, no sufficient facts or details are provided to allow the court to draw the inference that the defendant, based on an IP address alone, is liable for direct, or contributory, copyright infringement.

With respect to ¶¶38-44, Plaintiff states it "retained IPP, Limited to identify the IP address that are being used" and "used forensic software named INTERNATIONAL IP TRACKER v1.2.1 and related technology" to scan a Peer-to-Peer (P2P) network. A Google search of the Internet does not reveal a business that provides the services alleged by Plaintiff. The only IPP Limited found on the Internet is at http://www.ippltd.us/, yet none of the services provided by IPP Limited appear to include tracking software as alleged by Plaintiff. See Defendant's **EXHIBIT A.**

With respect to ¶41 of the FAC, Plaintiff concludes that "[e]ach Defendant had copied a piece of Plaintiff's copyrighted Works" and "[t]herefore, each Defendant was part of the same series of transactions" yet the alleged infringement took place over a course of at least two months. See, P's Exh. C to the Amended Complaint. The court should flatly reject Plaintiff's flawed reasoning and disregard the statement.

Plaintiff also concludes, in ¶ 42 of the FAC that "each of the Defendant's computers used their identified IP Addresses to connect to the investigative

6

server" yet fails to identify the investigative server with sufficient particularity, or how the server connected with Defendant's IP address.

In ¶¶ 8, and 38-44, Plaintiff has alleged it is monitoring Defendant's IP address through IPP Limited. Plaintiff has not sufficiently identified IPP Limited or the software employed in the monitoring of Defendant John Doe #1 to support the causal connection that Defendant corporation actually committed the alleged infringement as opposed to someone else.

Other similar lawsuits have also employed the fictitious IPP, Limited (or, alternatively, IPP International). See, for example, Patrick Collins v John Does 2:11-cv-15231, Doc#8, filed 3/26/2012, and Nucorp v Bila, 1:12-cv-07029, Doc#1, filed 9/1/12. See Defendant's **Exhibit B and C.** There is no doubt anyone reviewing the attached **Exhibits B and C** will note the substantial similarities of the deficient pleadings to that of Plaintiff's FAC.

In these purported copyright infringement cases, there is typically a monitoring company involved (or a purported Copyright Enforcement Agency that is not authorized by the Federal Government), but salient facts about the company are absent. When a question is raised about IPP, Plaintiff submits a Declaration of Tobias Fieser (**See Defendant's Exh. D**), who identifies the company as being German, yet in Plaintiff's Memorandum in Opposition to Motion to Quash, Doc#31, filed 11/05/12, Plaintiff identifies the company as

7

being a British company with an office in Germany. See, page 13, P's Doc#31. It is indeed difficult to determine definitively whether any of these statements are true. The fact that Plaintiff is concealing information about the company, and in view of its inconsistent statements described above, makes it highly unlikely that IPP Limited exists as an actual business entity.

The question that needs to answered is how the company is monitoring a BitTorrent file without downloading or seeding it initially. As presently understood, the only technical way to monitor a torrent file is to become part of the "swarm" as a peer (downloader) or a seeder (server). **(See page 3, Defendant's Exh. E.)**

Another missing piece of the puzzle with respect to the monitoring companies is the set of techniques employed, that appear to exclusively work only for the pornography industry, which have never been disclosed publicly, and in fact in every instance avoid having the evidence proved in court.

The remaining paragraphs of the FAC generally describe the procedure with respect to BitTorrent, but do not include a plausible statement capable of showing that the activity occurring through an IP address must therefore be the result of Defendant's volitional acts.

Thus, the FAC fails to provide any information or details as to how Plaintiff concluded that Defendant (as opposed to other individuals having

8

access to the IP address of a NJ corporation) violated any of Plaintiff's purported rights.

As recently held by Judge Moskowitz in the Southern District of California, "[d]ue to the risk of "false positives" an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement." *AF Holdings LLC v. Rogers*, No. 12-1519, 2013. The same should hold true for John Doe # 1, a corporation, for which personal involvement cannot plausibly be proven.

Many commentators have also demonstrated the problems with false positives in these copyright infringement cases. For example, a client requesting a download can substitute another IP address for its own to a BitTorrent tracker; a user can misreport its IP address when uploading a torrent file; and malware on a computer can host and distribute copyrighted content without knowledge or consent. See, Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice. **(Defendant's Exh. F)** As another example, a Princeton Univ. professor set up experimental stations, each of which got a takedown notice based on the IP address alone, yet nothing whatsoever had been downloaded. **(Defendant's Exh. G)**

The facts behind these cases continues to be revealed. It was recently

found that Prenda Law (involved in AF Holdings v. Rogers) had been operating a honeypot to lure Internet users to a website to download copyrighted material, as confirmed by Comcast. (**Defendant's Exh. H and I**.)

Based on the above, it appears highly unlikely that Plaintiff's allegations, even if presumed true, are supportable under Rule 8, Fed.R. Civ.P. Moreover, if one presumes that the statements in the FAC with respect to IPP Limited to be true, Plaintiff has indicated that is uses the "same process when identifying infringers as Federal Law Enforcement", page 13, P's Doc 31, filed 11/05/12, leading one to conclude the techniques and software of IPP Limited may be in violation of the Federal Wiretap Act, 18 U.S.C. § 2511 *et seq.*, among other statutes.

All Plaintiff has is an unsupported "guess" that Defendant is an infringer, and the FAC is thus subject to dismissal, as (1) Plaintiff admittedly doesn't know who actually committed the alleged infringement; (2) the FAC alleges no facts supporting an inference that the subscriber of the account is in fact an individual who actually uploaded or downloaded Plaintiff's movie(s); and (3) the Complaint alleges no basis for holding an account subscriber liable for the allegedly infringing conduct of unknown others, if such persons exist.

Plaintiff's allegations are also likely unsupportable under Rule 11. To the extent the court grants John Doe #1's motion to dismiss under Rule 12(b)(6), the

court is respectfully requested to retain Rule 11 jurisdiction.

## IV. CONCLUSION

Computer science literature and the federal courts across the country have cited problems with the reliability of BitTorrent copyright plaintiffs' methods of so-called identification of infringers. As set forth above, Plaintiff cannot plausibly allege a prima facie case of copyright infringement stemming from the use of peer-to-peer file sharing systems where Defendant John Doe #1 is a corporation and connected to the alleged infringement solely based on an IP address. Therefore, the Motion to Dismiss should be granted, and the court is respectfully requested to retain jurisdiction under Rule 11.

Respectfully submitted,

Date: December 10, 2013

/s Jane E. Keene, Esq.
Jane E. Keene
Keene IP Law, LLC
100 Overlook Center, 2nd Fl.
Princeton, NJ 08540
Telephone: 609-375-2085
E-mail: jane@keeneiplaw.com